AGNES YOUNG, Appellee, v. W. F. HENDRICKS, Appellant.

No. 44627.

FEBRUARY 7, 1939.

Jones & White, for appellee.

McNett, Kuhns & Brown, and Putnam, Putnam, Fillmore & Putnam, for appellant.

STIGER, J.—About 8 o'clock on the morning of November 27, 1936, plaintiff was riding in an automobile owned and driven by

her husband, Dillard Young. They were proceeding west on East Main street in Ottumwa, Iowa, and at the same time defendant was driving his automobile east on said street which was covered with ice. There were two automobiles parked on the north side of the street about 25 feet apart. Main street is 33 feet wide.

The following specifications of negligence, among others, were submitted to the jury:

(1) Defendant failed to travel at all times on the right-hand side of the center of the street as required by Code section 5019.

(2) Defendant failed to obey the provisions of a municipal ordinance of the city requiring an operator of a vehicle to turn to the right when meeting another vehicle and to drive at all times on the right hand side of the center of the street.

(3) Defendant was driving his automobile without having the same under control.

▬▬▬▬▬▬▬▬▬ complains of the instructions on the above items of negligence because they did not submit to the jury the defense of legal excuse for violation of the statutes. Legal excuse is, as often defined by this court:

(1) Anything that would make it impossible to comply with the statute or ordinance.

(2) Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

(3) Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

(4) Where a statute specifically provides an excuse or exception.

See Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552.

Appellant contends that the evidence established his defense of legal excuse under our definitions of legal excuse, numbers 2 and 3 set out above. Appellant claims that the evidence shows that the icy condition of the street caused his car to slide when he applied his brakes upon observing the appellee's automobile and made it impossible for him to control his car, the icy condition of the street being something over which he had no control which caused his car to skid, and also that an emergency confronted him caused by the driver of the appellee's car and which

was not of his own making and by reason of this emergency he, upon applying his brakes, was unable to control his automobile due to the icy street.

Plaintiff's evidence is substantially as follows: When plaintiff's car had reached a point immediately east of the east parked car, plaintiff and her husband observed appellant's car approaching from the west, skidding from the south side toward the north 'side of the pavement directly toward plaintiff's car. At this time, appellant's car was about 120 feet west of the Young car. Dillard Young, in order to avoid appellant's car, turned his car to the right in an attempt to drive in between the two parked cars along the north curb. When the front end of his car was within 3 feet of the north curb and the rear of the car was just past the east parked car it was struck by appellant's automobile and thrown against the north curb breaking the rear wheel and when it came to rest the right rear axle was on the curb and the car was about 3 or 4 feet west of the east parked car. Plaintiff was thrown out of the door of the car on to the parking and received the injuries for which she sought compensation. Plaintiff's car was at all times on the north side of the street traveling about 15 miles per hour and did not skid at any time until struck by the appellant's car. Appellant's car was traveling 35 to 40 miles per hour. The record shows that the Young automobile traveled from a point just east of the east parked car to about 3 feet west of said car while appellant's car was traveling a distance of at least 40 to 50 feet.

Appellant did not testify, nor does he claim, that plaintiff's car was on the wrong side of the street at any time nor did he deny that the accident occurred on the north side of the street near the north curb. Appellant testified that he first observed the Young car approaching him from the east when it had reached a place immediately south of the back end of the east parked car.

Appellant gave his version of the accident in the following language:

"When I first saw the Young automobile it was practically even with the farthest car that was parked east along the curbstone on the north curb. When I first observed it it appeared to me that it was just about to the back end of this first car, and it was kind of skidding—well, the back end out a little bit and

the front end in. It was skidding at an angle like. It was skidding toward me. It appeared the front end had tried to turn to his right, the back end was out towards the center of the street. When I first observed the Young car skidding I would say I was around 40 or 50 feet from it. When I first observed this Young automobile skidding I was on my own side of the street which would be the south side. When I saw the Young car skidding toward me I tried to stop. I put on my brakes. When I applied the brakes my car didn't stop, I just skidded. At the point where I applied my brakes the condition of the pavement was icy. We come together. The front part of my car was struck because it broke the bumper off. After the impact Mr. Young's car was in between those two cars that were parked. I am referring to the cars parked on the north curb. I was traveling approximately between 15 and 20 miles per hour. My car came to a stop after the impact on the south side of the street."

The north one half of the street was 16½ feet wide. The east parked car was 6 feet wide. When the Young car was approaching and passing the parked car it must have been within approximately 2 feet of the center line of the street and it at all times remained on the north side of the street. If, as claimed by appellant, the Young car skidded on the ice it was for a negligible distance.

An emergency has been variously defined as (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action; exigency; pressing necessity. 20 C. J. 499; U. S. v. Sheridan-Kirk Contract Co., D. C., 149 F. 809.

That an approaching car, traveling on the right-hand side of the center of an icy street, might skid to some degree was not an unforeseen circumstance or unexpected happening constituting an emergency within the scope of our definition of a legal excuse. Appellant testified that the Young car "was kind of skidding—well, the back end out a little bit and the front end in". Either, as contended by plaintiff, appellant had lost control of his car when first seen by plaintiff, or he applied his brakes and managed his car in so unskillful a manner that it swerved to the left and skidded into the Young car.

The manner in which the Young car was operated on its lawful place on the highway did not create an emergency excusing the violation of the statute by appellant.

■ The second definition of a legal excuse is "anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance". Appellant's argument that the icy condition of the street caused his car to slide when he applied his brakes and was something over which he had no control and therefore the condition of the pavement constituted a legal excuse can not be sustained. While we agree with appellant that the "icy condition of the street was something over which he had no control", he was responsible for the control of his car while driving on the ice and was required to use care commensurate with the dangerous condition of the highway.

Finding no circumstances in the record constituting a legal excuse for appellant's violation of the statutes there was no basis for an instruction on legal excuse.

■ II. Another assignment of error is that the trial court erred in refusing to give appellant's requested instruction No. 4 which reads:

"You are instructed that it is the law that persons operating motor vehicles upon a highway shall have the same under control, and you are instructed that the defendant, W. F. Hendricks, in this case, had a right to assume that the driver of the car in which the plaintiff was riding would obey this law until he, the defendant, W. F. Hendricks, knew, or until in the exercise of ordinary care he should have known otherwise."

It is often stated in our decisions that an operator of an automobile on the highway has the right to assume that other persons using the highway will obey the law of the road until he knows, or until in the exercise of ordinary care he should have known otherwise, and the failure to give a requested instruction advising the jury of this rule, in a case where the rule is applicable, is reversible error. Fry v. Smith, 217 Iowa 1295, 253 N. W. 147; Hoover v. Haggard, 219 Iowa 1232, 260 N. W. 540.

Appellant testified that when he *first observed* the Young car it was skidding toward him and he applied his brakes and the cars came together. It is obvious that appellant did not

have the right to assume, and did not assume, that the driver of the Young automobile would have it under control and drive at all times on his right side of the street because, according to his testimony, he knew that the driver of the Young car was not obeying the law and that the Young car was out of control and for that reason he immediately applied his brakes in order to avoid it. Appellant, from the time he first saw the Young car, acted on the assumption that the car was out of control and not on the assumption that the driver would have it under control.

There being no evidence to support the requested instruction, the trial court was right in refusing to give it.

III. Appellant predicates error on the refusal of the court to give his requested instruction No. 5 which reads:

"You are instructed that it is the law that the operator of a motor vehicle in cities and towns, shall at all times travel on the right-hand side of the center of the street, and you are instructed that the defendant, W. F. Hendricks, in this case, had a right to assume that the driver of the car in which the plaintiff was riding would obey this law until he, the defendant, W. F. Hendricks, knew or until in the exercise of ordinary care he should have known otherwise."

As there is no evidence that plaintiff did not at all times travel on the right-hand side of the center of East Main street, the trial court was right in rejecting this requested instruction. Hoover v. Haggard, 219 Iowa 1232, 260 N. W. 540.—Affirmed.

MITCHELL, C. J., and all JUSTICES concur.